(81 South. 674)
BAKER et al. v. GATE CITY COFFIN CO. et al. (5 Div. 720.)

(Supreme Court of Alabama. April 24, 1919.)

1. EQUITY ⬅148(3) — CANCELLATION OF MORTGAGE — ASSIGNMENT FOR BENEFIT OF CREDITORS—PLEADING.

A creditor in a single bill may pray for a cancellation of a mortgage as being made to hinder, delay, or defraud creditors under Code 1907, § 4293, and, in the alternative, that the mortgage be declared a general assignment in virtue of section 4295.

2. FRAUDULENT CONVEYANCES ⬅88 — VOLUNTARY CONVEYANCE.

Where bank purchased its debtor's mortgage to another, and the debtor, to secure his prior indebtedness to the bank as well as such mortgage indebtedness purchased by it, subsequently executed mortgage to the bank covering other land in addition to the previously mortgaged land, the effort of the debtor to convey the additional realty to the bank was without effect, being a voluntary conveyance so far as his existing creditors were concerned.

3. FRAUDULENT CONVEYANCES ⬅301(1)—INTENT TO HINDER CREDITORS — SUFFICIENCY OF EVIDENCE.

The mere fact that a creditor, to whom a debtor voluntarily executed a mortgage to secure the amount owing to him, knew that the debtor was unable to satisfy in money his liabilities was insufficient to establish a purpose on the part of the creditor to hinder, delay, or defraud other creditors under Code 1907, § 4293.

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬅14(1)—GENERAL ASSIGNMENTS.

Where a debtor unable to pay all his liabilities gave a mortgage on all of his property to a creditor, except his homestead, "which was not subjected to his debts," to secure indebtedness to such creditor, the mortgage will be held a general assignment under Code 1907, § 4295, inuring to the equal benefit of all creditors.

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬅14(1)—GENERAL ASSIGNMENTS—PARTIAL RELEASE—EFFECT.

Where a debtor unable to pay all his liabilities executed a mortgage to a creditor on all his property to secure his indebtedness to such creditor, the mortgage was a general assignment under Code 1907, § 4295, and the rights of all other creditors became fixed, and were not affected by a subsequent release of a part of the property, although the property released had been included in the mortgage through mistake.

6. ABATEMENT AND REVIVAL ⬅43—BANKRUPTCY—CREDITOR'S SUIT.

A bankruptcy proceeding, instituted and consummated while an action to have a mortgage declared a general assignment under Code 1907, § 4295, was pending, did not abate the action; the pendency of the action having imposed a lien upon the property of the debtor.

Appeal from Circuit Court, in Equity, Coosa County; S. L. Brewer, Judge.

Bill by the Gate City Coffin Company and another against D. W. Baker and another. Decree for complainants, and respondents appeal. Reversed and remanded, with directions.

Riddle & Riddle, of Talladega, for appellants.

George A. Sorrell, of Alexander City, and Felix L. Smith, of Rockford, for appellees.

McCLELLAN, J. [1] The complainants are the Gate City Coffin Company and the King Hardware Company; the respondents are D. W. Baker and the Farmers' & Merchants' Bank. The original bill was filed June 27, 1916. Its theory was, and yet remains in one aspect of the alternative introduced by amendment, to cancel a mortgage executed by D. W. Baker to the Farmers' & Merchants' Bank on January 10, 1916, because fraudulent and void under the provisions of Code, § 4293. On August 24, 1916, the bill was amended with the view to having the said mortgage declared a general assignment in virtue of Code, § 4295. A single bill may now properly invoke relief under either alternative. Dozier v. Farrior, 187 Ala. 181, 188, 189, 65 South. 364. The court, in its decree, granted relief under the phase of the bill which sought cancellation of the mentioned mortgage, on the ground that it was void because it was made to hinder, delay, or defraud creditors within the provisions of section 4293.

[2, 3] The complainants became creditors of Baker during the early part of the year 1915, and on May 22, 1915, reduced their claims to judgments, on which executions were returned by the sheriff nulla bona. On October 19, 1915, Baker executed to Obe Riddle two notes and mortgages, to secure an aggregate sum of $4,500, maturing on January 1, 1916. The validity of these notes and mortgages to Riddle is not brought into question in this cause. When Baker executed the mentioned mortgage to the bank for $13,029.-19, which, on its face, covered all the personal property owned by Baker, as well as certain lands described therein, constituting all the land Baker owned, as the agreement of the solicitors recites, "except a homestead that was not subject to his debts." The amount expressed in the notes and mortgage to the bank was composed of $4,500, paid in cash by the bank to Riddle to effect the purchase (not payment and discharge) and assignment to it of the notes and mortgages Baker had given Riddle in October, 1915, and the pre-existing indebtedness, with interest, of Baker to the bank, to secure which the bank had Baker's notes and some collateral. It appears that the bank and Baker agreed, when this mortgage was executed, that it should serve as additional security to the bank for Baker's indebtedness to it and of the mortgages to Riddle, so assigned by Riddle to the bank for present value paid. Aside from the personal property the mortgage to the bank purported to cover, it described land not subject to the previous mortgages executed by Baker to Riddle. Since nothing was then paid to Baker by the bank for or on account of the Riddle mortgages, since there does not appear to have been any consideration moving from the bank to Baker upon which to rest the conveyance by Baker of the additional real property, and since the payment of the $4,500 to Riddle was absorbed as a consideration in effecting the assignment of the Riddle mortgages to the bank, the effort of Baker, the debtor of complainant and of the bank, to convey the additional realty to the bank was without effect; was a voluntary conveyance so far as his existing creditors were concerned. It is hardly necessary to remark that these considerations can be accorded no effect to impair or postpone the rights acquired by the bank through the assignment of the Riddle mortgages upon a present consideration paid. The agreement of the solicitors, upon which the cause was in part submitted, commits the complainants to a concession that the statements made in the answers filed by Baker and the bank, both originally and as amended, are true, with an exception without importance at this time. This concession forbids recourse to the contradictory statements in the responses of Baker and the bank to the interrogatories filed to them by the complainants; it appearing, according to our calculations, based upon the responses to interrogatories, that Baker was indebted in the sum of about $19,000, and that the value of his entire assets was several thousand dollars less than his indebtedness on January 10, 1916. Accepting the statements of fact in the answers of Baker and the bank to the bill as true, according to the agreement mentioned, the only possible evidence that the bank entertained any intent to hinder, delay, or defraud the creditors of Baker is said to be found in the simple statement that the bank knew that Baker was unable to pay in money what he owed the bank or was unable to satisfy in money his liabilities. This meager evidence does not, in our opinion, serve to establish a purpose on the part of the bank, in taking the mortgage of January 10, 1916, to hinder, delay, or defraud the creditors of Baker, since the act of the bank in so taking the mortgage of that date to secure bona fide debts may have consisted with entire good faith in the premises. Cooper v. Bank, 99 Ala. 119, 11 South. 760. Our conclusion is that the agreed evidence submitted to the court below fell short of establishing a case for complainants' relief under that phase of the bill which sought the cancellation of the mortgage of January 10, 1916, because affected with a purpose to hinder, delay, or defraud Baker's creditors.

This conclusion leads to a reversal of the decree from which the appeal is taken.

[4, 5] The complainants are entitled to relief under the alternative phase of the bill which is predicated of the rights established by the provisions of Code, § 4295; which, in the circumstances therein defined, declares that a conveyance by a debtor of substantially all his property subject to execution, whereby a preference among creditors is

given, is a general assignment, and inures to the benefit of all the creditors of the grantor equally.

The mortgage executed to the bank on January 10, 1916, described all the property that Baker owned except the homestead, "which was not subject to his debts." This put the instrument within the contemplation of the statute. Code, § 4295. It was a conveyance of substantially all his property subject to execution to satisfy his debts. It was therefore in effect a general assignment, inuring to the equal benefit of all his creditors. It appears from the record that subsequent to the filing of the bill in this cause the bank released and renounced all claim it might have, under the terms of the mortgage to it, to all the personal property which the mortgage purported, in general terms, to cover; this because there was no purpose of either Baker or the bank to include any personal property in the mortgage of January 10, 1916; the asserted mistake being attributed to the fact that a blank mortgage was used in the preparation of the instrument executed by Baker on January 10, 1916, to the bank. The mortgage was filed for record on February 5, 1916. It had been theretofore delivered by Baker to the bank. On what particular date the bank executed release of the personal property so erroneously described in the mortgage of January 10, 1916, does not appear. The right of the creditors of Baker to the benefit of protection accorded creditors by the provisions of Code, § 4295, came into existence when the mortgage of January 10, 1916, was executed and delivered to the mortgagee; and by no subsequent act on the part of the bank and Baker, certainly after the complainants had filed this bill, could these complainants and other creditors be deprived of the benefit which had accrued to them in virtue of the statute cited.

[6] On February 19, 1917, Baker filed a petition to be adjudged a bankrupt. This cause was, as appears, then pending. Subsequently he was adjudged a bankrupt; a trustee was appointed; final settlement by the trustee has been had; and a decree rendered by the bankruptcy court discharging the trustee. The bankruptcy proceeding, instituted and consummated while this cause was pending, was without effect to abate this cause or to deprive complainants of the right to have it progress to a decree in the premises, the pendency of the cause having imposed a lien upon the property of the debtor. 12 Cyc. pp. 61, 65; 16 Am. & Eng. Encyc. of Law, 774, 775. The decision of this court in Ellis v. Mobile R. R. Co., 166 Ala. 187, 51 South. 860, is without influence in the present circumstances. There no lien existed, as here, to preserve the complainant's right in the premises, as against a discharge in bankruptcy.

The decree appealed from is reversed, and the cause is remanded, with directions to the court below to enter a decree declaring the mortgage of January 10, 1916, from Baker to the Farmers' & Merchants' Bank a general assignment, and thereupon proceeding according to the practices of the court of equity, taking care to preserve the rights of the Farmers' & Merchants' Bank as assignee of the mortgages executed by Baker to Riddle.

Reversed and remanded, with directions.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.